TERRELL, Justice.
September 19, 1955, absent a public hearing, the Florida Milk Commission, hereinafter referred to as the “Commission,” adopted a resolution and promulgated orders suspending enforcement of milk prices in all milk marketing areas of the state for a period of one year. Said orders did not withdraw the Commission’s jurisdiction to supervise and regulate the industry in the milk marketing areas previously established, but expressly retained the right to “reinstate the enforcement of the price order this date suspended,” should the Commission determine that to be in the best interest of the consumer, distributor and *218 producer “at any time during said one year period and after investigation based on experience and fact.”
The plaintiffs as milk producers, distributors and producer-distributors, filed their complaint in the Circuit Court' directed to the Commission and its members personally praying that the orders suspending enforcement of said price orders be adjudicated to be illegal and ineffective and for appropriate injunctive relief to preserve the status quo. The cause came on for hearing on application of the plaintiffs for temporary restraining order, at which time the Attorney General was permitted to intervene “to test the propriety of the proceedings, if So advised.” The defendants filed in -the Circuit Court a certified transcript of the proceedings before the Commission at its meeting September 19, 1955, at which time the orders in question were promulgated. ■ The plaintiffs countered with an alternative claim for relief by moving the court to consider the complaint as a petition in error for statutory review of the Commission’s resolution and orders as provided by Sections 501.09(5) and 501.13(7), Florida Statutes, 1953, F.S.A., and prayed that the court reverse or vacate the Commission’s orders for the following reasons: (1) the resolution and orders are beyond the powers of the Commission to make and are in violation of the duties imposed on it by the legislature ; (2) said resolution and orders were made without notice and public hearing as required by Sections 501.06 and .501.13(7), Florida Statutes, 1953, F.S.A.; and (3) the resolution and orders are not warranted or supported by the record or by any findings of fact justifying the Commission’s action, but are contrary to the legislative findings contained in Chapter 501.
It appears from the record, appendix to appellants’ brief 94-99, that the Circuit Court proceeded on the assumption that the Commission had authority to exercise its discretion by declining to fix prices initially. Based on that assumption, he concluded that it has the same discretionary authority to terminate or remove price controls which it has established, including authority to suspend their enforcement as it did by the resolution and orders under attack. The court also concluded that the Commission’s authority in this respect may be exercised without giving any notice of its intention to take such action and without having any public hearing' to consider faking that action at which members of the industry or of the public are afforded an opportunity to be heard and to introduce evidence. The court accordingly on motion of the Attorney General dismissed the complaint as an original proceeding. Though the court felt that the complaint should be regarded as a statutory review of the Commission’s orders “to the end that all questions of the propriety of this proceeding be eliminated,” he nevertheless denied the complaint as a petition in error for the reason that he ruled that the orders of the Commission in the main case were legal. From the orders so entered plaintiffs appealed and have assigned error:. (1) on dismissal of their complaint as an original proceeding; (2) on.denial of their motion that the resolution and orders of the Commission be reversed or vacated as upon a statutory appeal.
Appellants raise three questions for determination but in our view they may all be comprehended in the single question of whether or not the Commission was authorized to promulgate the resolution and orders suspending price fixing of milk for a period of one year without' notice and an opportunity to be heard as provided in Section 501.13(7), Florida Statutes, F.S.A.
The resolution provided “that from the date of October 1, 1955, a moratorium be declared and the enforcement of all price orders in all markets of the State of Florida be held in abeyance for a period until October 1, 1956.” To effectuate this resolution, the Commission entered a separate order applying in each of the seventeen milk marketing areas as follows:
“that the enforcement of Official Order No. -establishing and determining the minimum wholesale, retail *219 and producer fluid milk prices for the -Milk Marketing Area be, and it hereby is, suspended on a trial basis for a period of one year ending 12:01 A.M., October 1, 1956.” (A. 24.)
Each of the orders also provided:
“that at any time during said one year period and after investigation based on experience and fact the Commission may, in the event, it determines it is in the best interest of the consumer, distributor and producer to reinstate the enforcement of the price order this date suspended.” (A. 24.)
Appellees direct our attention to the fact that neither the resolution nor the orders purport to vacate or suspend the price fixing orders; only the enforcement of milk prices in the price fixing areas is suspended. What the difference is between suspending price fixing orders and suspending the price of milk fixed by said orders we do not understand. Fixing the milk price was certainly the pith of the order and that done, there was nothing left for it to affect. The purpose of the Commission in suspending enforcement of the price of milk as declared in the preamble to the price orders is as follows:
“afford the Commission opportunity to study the effect of the suspension of enforcement and enable it to determine if it would be in the best interests of the consumer, the distributor and the producer to withdraw the exercise of its minimum wholesale, retail and producer price fixing powers for said milk marketing area.” (A. 24.)
Other recitals in the preamble to the orders suspending enforcement of milk prices show that the Commission was uncertain and was trying to determine how or to what extent it should exercise the price fixing power conferred on it. The following findings reveal this attitude: (1) Chapter 501, Florida Statutes, 1953, F.S.A., is silent as to the factors to be considered by the Commission in determining whether the continued imposition of minimum wholesale, retail and producer fluid milk prices is necessary and in the best interest of the consumer, the distributor and the producer in the milk marketing area mentioned ; (2) the Commission after investigation and public hearing has been unable to determine whether it is in the best interests of the consumer, the distributor and the producer that the Commission shall withdraw the exercise of its minimum wholesale, retail and producer price fixing powers from said milk marketing area, and (3) further investigation and public hearings would leave the Commission no better informed on the subject. Section 501.13, Florida Statutes, F.S.A., provides how investigations incident to price orders should be made, what elements should be considered and is a complete answer to this finding of the Commission.
Thorough study of these and other observations by the Commission suggests a slightly different version of the real question in this case — when the Commission has once established price controls of milk in a marketing area or areas, does it have authority to suspend enforcement of the milk prices on a trial basis as revealed by the resolution and orders promulgated September 19, 1955, absent notice or an opportunity to be heard by those affected. Account of the uncertainty of the Commission as to the factors to be considered in determining whether the continued imposition of minimum wholesale, retail and producer milk prices is necessary and in the best interest of the consumer, the distributor and the producer, the ambiguities and lack of logical continuity in casting the act and loose phraseology in statement of portions of it, it certainly can not be said that this question is not without its difficulties or that it may be answered in a “so what” lackadaisical fashion. Appellants contend that the question is foreclosed by Sections 501.06 and 501.13(7), Florida Statutes, 1953, F.S.A., and should elicit a negative answer. Appellees relying on Section 501.01, declaring the policy of the legislature in enacting the Milk Con *220 trol Act, Sections 501.03 and 501.04, relating to supervision of the milk industry, and Sections 501.13 and 501.20, relating to the creation and definition of the powers of the Commission, contend that the question merits an affirmative answer.
The last recited provisions of the act relied on by appellees are general in nature and have to do with the policy and reasons for passing the act, the composition and various powers of the Commission and supervision of the milk industry. It is quite true that if read in isolation these provisions of the act are susceptible to the interpretation contended for by appellants but read in connection with the act as a whole, its meaning is circumscribed and limited by the very terms of these sections. We so hold because in our view, the nub of this controversy turns on the interpretation of Sections 501.06 and 501.13(7), Florida Statutes, 1953, F.S.A. They follow in sequence the statutes relied on by appellees and fit the question we have here like a glove. Section 501.06 relates to “any investigation” by the Commission and requires that it be accomplished “in accordance with rules and regulations to be promulgated by the commission.” It further provides that “reasonable notice” be given to all persons affected by the orders to be made after such investigation, opportunity to be heard and present testimony if desired. It further provides the manner for serving and securing the attendance of witnesses and all other essentials to an orderly hearing.
Section 501.13(7) is as follows:
“The commission may upon its own motion or upon application from time to time, alter, revise or amend an official order theretofore made with respect to the prices to be charged or paid for milk. After making such investigation and before making, revising or amending any order fixing the price to be charged or paid for milk, the commission shall give a hearing thereon to all parties interested upon reasonable notice to such interested parties and to the public of such hearing in such newspaper or newspapers as in the judgment of the commission shall afford sufficient notice and publicity. * * *»
As will be observed by casual inspection, the last quoted provision has to do with revision or amending official orders previously made with respect to the prices to be paid for milk, the very question we have here, and requires the Commission to hold a public hearing thereon after all parties affected are given notice and an opportunity to be heard. Such procedure is consistent with the entire tenor and purpose of the act. It is also consistent with action of the legislature in that it has, as previously pointed out, refused to repeal the act or any provison relating to price fixing. The very fact that the Commission undertook to suspend the enforcement of milk prices for a year until it could investigate would seem to be proof conclusive that something was wrong. If this conclusion be true, then it should have given notice as required by Section 501.13(7), last quoted, and proceeded with a hearing to secure facts on which it could order correction of the trouble.
After all is said, the question here is one of interpretation. When that is the case, it is the court’s duty to construe the act so as to accomplish the legislative purpose. If it be a constitutional provision, courts are expected to uphold its constitutional validity if there is any reasonable theory under which it can be done. The overall purpose of the act under review can not be mistaken. It was more thoroughly covered in Shiver v. Lee, Fla., 89 So.2d 318. It will not be further adverted to here except to say that it was to assure a clean, wholesome supply of milk at all times and to protect the consumer, distributor and the producer in doing so. It was based on the finding that a plentiful supply of clean milk was essential to the health and welfare of the people. It con *221 tained elaborate comprehensive provisions to effectuate that purpose. Section 501.21 of the act recognized a continuing emergency to effectuate its purposes. Some signs indicate that regulations and prices may have gotten out of hand, but if that be true, the Commission had ample power to correct it under the act.
Appellees contend that during the period from November 5, 1947, to August 31, 1955, the Commission held thirty-five hearings in different parts of the state, the purpose of which was to receive “testimony and evidence relative to the cost of production, processing and distribution of milk and milk products” and that the testimony so secured was ample to enable the Commission to • determine whether the enforcement of price controls should be continued or were in the interest of the consumer, the distributor and the producer. There are suggestions that notice of the meeting of September 19, 1955, was heralded through the press and through other media but the record discloses nothing to show that the Commission had in mind suspending all price enforcement orders, that any advance publicity was given of any such purpose, that no investigation was made for such a purpose and no public hearing was had on that point.
It is accordingly our view that the action of the Commission in suspending price controls on milk and milk products was accomplished without giving notice of its intention to do so, without receiving or affording opportunity for the introduction of evidence and without any public hearing as required by law, for which the resolution and orders are without legal force or effect and being so, the judgment appealed from is reversed with directions to the Commission to continue the enforcement of its prices which were in effect September 19, 1955, until such price orders have been revised or amended by valid order of the Commission.
Reversed.
DREW, C. J., and THOMAS, HOB-SON, ROBERTS and O’CONNELL, JJ., concur.
THORNAL, J., not participating.